UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| BERNARD GRANT | CIVIL ACTION NO. 08-cv-1546 |
| VERSUS | JUDGE STAGG |
| WARDEN, AVOYELLES PARISH CORRECTIONAL CENTER | MAGISTRATE JUDGE HORNSBY |

### REPORT AND RECOMMENDATION

**Introduction**

A Caddo Parish jury convicted Bernard Grant ("Petitioner") of possession of a Schedule II controlled dangerous substance (cocaine) with intent to distribute. Petitioner was adjudicated a third-felony offender and sentenced to 30 years at hard labor. His conviction and sentence were affirmed on direct appeal. State v. Grant, 954 So.2d 823 (La. App. 2d Cir. 2007), writ denied, 969 So.2d 629 (La. 2007). Petitioner now seeks federal habeas relief on the sufficiency of the evidence and ineffective assistance of counsel issues that he exhausted on direct appeal. For the reasons that follow, it is recommended that the petition be denied.

**Sufficiency of the Evidence**

    **A. The Evidence**

Agent Chad Denham of the Caddo–Shreveport Narcotics Task Force received information from an informant that powder and crack cocaine were being sold from an apartment at 1212 Sprague Street in Shreveport. Agent Denham instituted surveillance and arranged four controlled buys of drugs from the apartment by an informant who was given

money and equipped with an audio transmitter. In each of the four buys, the informant bought powder or crack cocaine, sold in plastic baggies. The informant bought one or two baggies each time, paying $10 for 0.1 gram of cocaine and $20 for 0.2 gram. The agents learned from the audio transmissions that a person named Terry Gill was selling drugs from the apartment, but Gill died before a search warrant was executed. Other unidentified voices were heard on the audio transmissions.

Based on the information obtained through the controlled buys, Agent Denham obtained a search warrant for the apartment. The special response team that executed the warrant secured three or four people who were standing outside the apartment, and they found marijuana on Timothy Cummings in the process. The team rammed down the front door of the apartment, deployed a distraction device, and entered in a "stick" formation so that they could quickly secure the apartment while the occupants were disoriented.

Agent Jeff Peters testified that, just before the distraction device was deployed, he saw a black male dressed in all black running from the living room to the back of the apartment. Peters, along with Agent Troy Skeesick, secured the bathroom, where they found Petitioner and Jackie Bosworth. Agent Peters testified that Petitioner was dressed in a black hooded sweatshirt and black pants; Bosworth was dressed in a tan shirt or jacket. Agent Denham testified that Petitioner and Bosworth were the only people in the apartment at the time the team entered the house, and it would have been impossible for others to escape through the boarded back door.

When Agent Peters entered the bathroom, he saw Petitioner use his left hand to drop a plastic bag inside a hole in the bathroom wall. The plastic bag contained nine, small, clear plastic bags with crack cocaine, and five small, blue, plastic bags with powder cocaine. Petitioner had $760 in cash on him. Agents found more crack cocaine and powder cocaine in the bedroom, and it was packaged in a manner similar to the drugs found in the bathroom. They also found ecstacy tablets. They did not find crack pipes or other paraphernalia suggestive of individual drug usage.

**B. Standard of Review**

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993).

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined

by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). A state court's decision is contrary to clearly established Supreme Court precedent when it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts. Pape v. Thaler, 645 F.3rd 281, 287 (5th Cir. 2011). A state court makes an unreasonable application of clearly established federal law when it identifies the correct governing legal principle from the Supreme Court's decisions but applies it to the facts in a way that is not only incorrect but objectively unreasonable. Renico v. Lett, 130 S.Ct. 1855, 1862 (2010).

**C. Analysis**

The State had the burden of proving beyond a reasonable doubt that Petitioner knowingly and intentionally possessed the cocaine and that he did so with the intent to distribute it. Petitioner argued on direct appeal that the evidence was not sufficient to meet the State's burden. The appellate court, citing the correct Jackson standard, first observed that Agent Peters' testimony was direct evidence of Petitioner possessing the drugs in his hand, and Petitioner does not seriously challenge that aspect of the case in his habeas petition. Rather, he focuses on the intent to distribute element.

The appellate court noted factors relevant to whether such intent is present: (1) packaging in a form usually associated with distribution, (2) evidence of other sales or

attempted sales by the defendant, (3) a large amount or quantity of the drugs, (4) expert or other testimony that the amount was inconsistent with personal use, and (5) the existence of any paraphernalia, such as bags or scales, that evidenced an intent to distribute.

There was no evidence that Petitioner sold cocaine from the apartment before the execution of the search warrant, but someone sold cocaine from the apartment at least four times shortly before the raid. There were unidentifiable voices on the audio recording of the controlled buys, but nothing to link Petitioner to them. On the other hand, Petitioner was caught red-handed with several small plastic bags of crack and powder cocaine, each containing a single-dosage amount. Petitioner also had a rather substantial amount of cash on his person. There was no evidence of scales or other devices suggestive of distribution, but there were also no pipes or devices found on Petitioner or in the apartment that would suggest personal use of the crack cocaine. The appellate court reviewed all of these factors and determined that the evidence was sufficient to uphold the verdict under the Jackson standard. State v. Grant, 954 So.2d at 829-32.

The state court's application of Jackson is reviewed under the deferential standard of Section 2254(d). See McDaniel v. Brown, 130 S.Ct. 665 (2010). The AEDPA standard does not permit a federal court to overturn the conviction unless the state court's adjudication of the Jackson issue was not only incorrect but so wrong as to be an objectively unreasonable application of Jackson. Petitioner has made reasonable arguments that might persuade reasonable persons to believe he was guilty of, at best, possession of cocaine. There is the

possibility that Petitioner was a mere customer whose purchase was interrupted by the raid, but the quantities of drugs and money easily suggest intent to distribute rather than purchase for personal use. The existence of grounds for these reasonable arguments is not sufficient to permit federal habeas relief. The state court articulated the correct governing principles from Jackson, thoroughly discussed the evidence, and reasonably applied Jackson to that evidence. Reasonable minds might differ if judging the case de novo, but the state court's decision is sufficient under the AEDPA to insulate the conviction from being overturned by a federal court on this issue.

**Ineffective Assistance of Counsel**

    **A. Strickland and AEDPA**

To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied

it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Richter, 131 S.Ct. at 786 (analyzing a Strickland claim). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. Finally, a Strickland petitioner must overcome the limitations of Section 2254(d) "on the record that was before the state court." Cullen v. Pinholster, 131 S.Ct. 1388 (2011); Pape v. Thaler, 645 F.3d 281, 288 (5th Cir. 2011).

### B. No Post-Verdict Motion for Acquittal

Petitioner argues that his counsel should have filed a post-verdict motion for judgment of acquittal to properly preserve his sufficiency of the evidence issue for appellate review. The state appellate court explained that it "considers claims regarding the sufficiency of evidence even when the defendant fails to file a motion for post verdict judgment of acquittal ... ." State v. Grant, 954 So.2d at 839. Accordingly, the court found that trial counsel was not ineffective in this regard. Petitioner continues to press the issue before the federal court, but he has yet to articulate how the lack of such a motion prejudiced his case. Prisoners and inmate counsel who continue to argue such plainly meritless claims delay the resolution of

petitions filed by themselves and others. They would better serve their cause to omit such claims and focus on those that might have merit.

### C. No Objection to Severance

Petitioner was originally charged jointly with Bosworth as a co-defendant, but the State later filed an amended bill of information that charged Petitioner individually. Petitioner argued on direct appeal that (1) severing his trial was improper without a hearing for the State to explain its reasons, (2) the severance gave the State an unfair advantage, and (3) trial counsel was ineffective for not objecting to the severance.

The appellate court found the issue was without merit because the Code of Criminal Procedure stated that jointly indicted defendants shall be tried jointly unless the State elected to try them separately. The Code required a hearing on a motion to sever only when the defendant moved for severance. State v. Grant, 954 So.2d at 836-37. The court rejected the ineffective assistance of counsel claim because of the lack of underlying merit.

Petitioner does not explain in his habeas petition how his counsel might have had a legal basis to prevent the severance. State law appears to allow the prosecution to do what it did. Assuming counsel could have raised such an objection and prevailed, Petitioner has not articulated any prejudice he suffered as a result of the severance. The State court did not apply Strickland in an objectively unreasonable way when it rejected Petitioner's empty claim that counsel should have objected to severance.

### D. Blanket Fifth Amendment Privilege

Jackie Bosworth and Timothy Cummings, outside the presence of the jury, appeared with their attorneys and stated that they would not testify because they were asserting their Fifth Amendment privilege against self-incrimination. Defense counsel did not object, but he did request that this fact be made known to the jury. The trial court did not allow that.

Petitioner argued on appeal that the court erred in allowing Bosworth and Cummings to make blanket assertions of the privilege and that counsel was ineffective for not objecting to the same. Petitioner said that he should have been allowed to question the two men on topics that would not have violated their right against self-incrimination, such as whether they lived at the apartment and for how long, whether Petitioner lived at the residence or was a frequent visitor, and whether either of them paid bills for the apartment or received mail there. Petitioner hoped by such testimony to show that he had no connection to the apartment.

The state appellate court addressed at length the propriety of a blanket invocation of the privilege and found that it was appropriate in this case. Most important, the appellate court found that the questions suggested by Petitioner almost certainly would have incriminated the two witnesses if they answered in a way helpful to Petitioner and, thus, they would have had the right to assert their Fifth Amendment privilege to those specific questions. State v. Grant, 954 So.2d at 837-38. The court rejected the claim of ineffective assistance of counsel due to the lack of underlying merit.

Petitioner makes a blanket assertion of this argument in his habeas petition and does not identify a single question that he might have asked that (1) would have aided the defense and (2) would not have drawn a reasonable invocation of the privilege. It is quite unlikely that Bosworth or Cummings would have been willing to testify about their association, to any extent, with an apartment in which police had just seized a large quantity of drugs. There is no basis to determine that the state court's rejection of this claim was an objectively unreasonable application of Strickland.

**E.  No Objection to Denham Hearsay**

Agent Denham testified that Agent Peters, after they entered the apartment, told Denham that he knew where narcotics were located in the bathroom. Tr. 276. Denham added that Peters said he saw a package thrown through a hole in the bathroom wall. Peters showed the hole to Denham, and Denham watched Peters retrieve the drugs from the area. Tr. 278.

Petitioner argued in a supplemental pro se brief on appeal that Denham's testimony was inadmissible hearsay and that his counsel was ineffective for not objecting. The state court reasoned that Denham was allowed to testify as to what all other officers told him during the course of the investigation, not for the truth of the matter asserted, but to explain why Denham took the actions he did. State v. Grant, 954 So.2d at 832-33. The court further reasoned that there could be no harm even if there were error because Agent Peters later took the stand and testified to exactly what he had seen. Id. Tr. 322-23.

Even if defense counsel had successfully objected to Denham's testimony on this point, the same evidence came in when Agent Peters took the stand and testified that he saw Petitioner throw a package of drugs in a hole in the wall. The state court's rejection of the Strickland claim under these circumstances was not objectively unreasonable.

**F.  Other Drugs Evidence**

Petitioner argued on appeal that counsel should have objected to the introduction of the cocaine and ecstasy found in the house that was not directly linked to him. The appellate court found that the evidence was properly admissible under Louisiana law because it was part of the res gestae and, though not construed as belonging to Petitioner, the drugs provided the jury information from which they could infer that the apartment was a place used for drug distribution. The court, therefore, rejected a claim that the evidence should not have been admitted and that counsel was ineffective for not objecting. State v. Grant, 954 So.2d at 833-35.

Counsel could perhaps have persuaded the trial judge to not admit the evidence of the other drugs had he objected, but the state appellate court sets forth sound reasons why the judge likely would have admitted the evidence under Louisiana law. The presence of the other drugs was not dispositive one way or the other, but they were evidence a juror might consider relevant to Petitioner's intent to distribute. Reasonable minds might differ on whether counsel should have at least raised the objection, but the resolution of the Strickland claim by the state court was certainly within the realm of reasonableness.

### G.  Opening the Door to Other Crimes Evidence

Defense counsel, in his opening statement, contended that Petitioner was at the apartment to play poker, not buy or sell drugs, and the money found on him was earnings from his construction job and gambling winnings.  Counsel suggested that Officer Denham recognized Petitioner "from an encounter of several, several months prior" and was harassing Petitioner for that reason.  Tr. 260-62.  During cross-examination of Denham, counsel asked the agent if there was any kind of confrontation between him and Petitioner in the front yard of the apartment.  At one point the agent said that he "had dealings with Mr. Grant before, if that's where you are going."  Counsel then followed by asking the circumstances of those prior dealings, and Denham said: "It had to do with another case pending against him."  The questioning then proceeded without further reference to the other case.  Tr. 303-04.

Petitioner argued on direct appeal that his counsel was ineffective because he opened the door to admission of other crimes evidence.  The appellate court noted that no evidence was presented as to any specific offenses committed or charged, and the questioning appeared to be part of a defense strategy aimed at showing the case was based on a pattern of harassment against Petitioner.  Considering the deference that trial counsel must be given with respect to such tactical decisions, and the lack of any prejudice from the oblique reference to the other case, the court rejected the Strickland claim.  State v. Grant, 954 So.2d at 840-41.  Considering the deference this court must afford that decision under the AEDPA, there is no basis for granting habeas relief with respect to this final claim.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied**.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 15th day of March, 2012.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE